MR. JUSTICE WEBER,
dissenting:
The majority concludes that reversal is required in this case because the instructions did not tell the jury that the implied covenant is measured by the justifiable expectations of the parties. This conclusion is based upon Nicholson v. United Pacific Insurance Company (1985), 219 Mont. 32, 710 P.2d 1342, 42 St.Rep. 1822. It seems inappropriate to apply a legal theory which had not yet been stated by this Court. In the present case, the jury instructions were given on May 1, 1984, nearly one year prior to the 1985 Nicholson decision. I conclude there is no reversible error, and I would affirm the jury verdict and judgment for the defendant.
The facts stated in the majority opinion present a very favorable picture of the plaintiff’s claim. No facts are presented which suggest a basis for the jury verdict for the defendant. However, the record demonstrates there were approximately 30 witnesses who testified in *515 behalf of the defendant during a month long trial. I believe it appropriate to set forth some of the facts which support the jury’s verdict.
When plaintiff first went to work for Pacific Hide and Fur Depot (Pacific), Mr. Palmer testified that Mr. Thiebes authorized him to offer plaintiff a $32,000 per year salary plus an unknown bonus. There is no testimony from Pacific that anyone represented to plaintiff that he would receive any higher salary. Furthermore, plaintiff himself testified that he realized any bonus he might receive would be discretionary with Mr. Thiebes and would have to be approved by Mr. Thiebes prior to receipt. Mr. Palmer also testified that plaintiff said he was anxious to leave Colorado and move to Montana. This testimony is relevant in considering the argument that the plaintiff was enticed to move his family from Denver to Great Falls based upon Pacific’s representations of a “glowing future.”
Several Pacific employees testified as to the dissension between plaintiff and Mr. Palmer and the disruptive effect it had on the purchasing department under plaintiff’s supervision. The Vice-president of Pacific testified that plaintiff had an obsession with Mr. Palmer’s interference with the purchasing department. An agent within the department testified to the effect that plaintiff was very candid about his dislike of Mr. Palmer and his disapproval of Mr. Palmer’s ideas and the way he did things. Another purchasing agent testified that employees within the department found plaintiff to be harsh and abusive, and that under his supervision, the department had experienced a considerable loss of morale. The agent testified that he had considered resigning due to the pressure of having to work for plaintiff and had expressed that inclination to Mr. Thiebes. Plaintiff agreed that the problems he had with Mr. Palmer created confusion within the corporation and that the confusion spilled over into other corporate branches.
Witnesses testified that the plaintiff frequently complained about his immediate supervisor to individuals outside the company. These complaints were expressed to one individual who testified that because of plaintiff’s statements, he formed a negative opinion of Mr. Palmer, and he believed that plaintiff’s statements were destructive to the interests of Pacific. Another individual unrelated to the company testified that plaintiff’s preoccupation with Mr. Palmer and his constant talk about the inner workings of Pacific demonstrated a lack of professionalism. At one point, plaintiff told this individual about an “ultimatum” which he had given Mr. Thiebes a few *516 months prior to his termination, indicating that “the situation was unworkable” and that “it will either be Roger or him, and that was the way he wanted to resolve it”.
The record contains substantial evidence that the plaintiff had been advised of the need to cooperate with Mr. Palmer, his superior, and that if his performance did not improve, the plaintiff could be terminated. The evidence further demonstrated that shortly thereafter, the plaintiff contacted another steel company concerning alternative employment, and this contact was made prior to his termination by Pacific.
Mr. Thiebes ultimately made the decision to terminate the plaintiff. Because Mr. Thiebes died prior to trial, we are not able to ascertain all of his reasons for the termination. The record does establish that Mr. Thiebes was well aware of the problems between the plaintiff and Mr. Palmer. He had also been told that the purchasing department was experiencing morale problems and that an employee was considering resignation. Supervisory employees of Pacific had indicated to Mr. Thiebes that if Pacific had to choose between the plaintiff and Mr. Palmer, it would be wise to terminate the plaintiff and retain Mr. Palmer. Mr. Palmer was described by several other Pacific employees as being more knowledgeable of the steel business and more dedicated to that business than was the plaintiff.
Other key employees testified that the plaintiff experienced a lack of effort when he was managing branch I of the steel business as well corporate purchasing. Mr. Thiebes’ letter of termination stated that the economic times and the plaintiff’s inability to manage branch I along with his purchasing duties were the primary causes for his termination.
Such evidence supports the contention of the defendant that its decision to terminate the plaintiff was a sound business decision. The jury accepted that idea, as demonstrated by the following question presented to it:
“Do you find that defendant Pacific Hide and Fur breached an implied covenant of good faith and fair dealing to the plaintiff, which was a proximate cause of damages to plaintiff Clifford Hobbs?”
To that question the jury answered, “No.” There is clearly substantial evidence to support the conclusion of the jury. I do not find a factual basis for trial reversal. In ordering a retrial, I note that almost 8 years have passed since the date of termination and 5 years *517 since the trial. We are posing a difficult trial problem for all parties by the present reversal.
The basic reason for reversal stated in part I of the majority opinion is that the instructions were inadequate. The problem instructions were 17 and 19. Instruction 19 stated:
“You are instructed that the defendant Pacific Hide and Fur Depot owed plaintiff Clifford Hobbs an implied-in-law duty of good faith and fair dealing arising out of the employer/employee relationship that existed between the parties. In considering whether the defendant acted in bad faith in the manner in which plaintiff Clifford Hobbs was treated during the employment relationship and at the time the plaintiff was discharged, you should consider all the evidence which tends to establish either good faith or bad faith. If you find that the defendant has violated this obligation imposed by law, the plaintiff is entitled to be compensated for all detriment or injury proximately caused thereby whether that detriment or injury could have been anticipated or not.”
The instruction stated that the District Court concluded that the duty of good faith and fair dealing did arise in the present contract. As a result there was no need to require the jury to weigh any circumstances to determine if such a covenant was appropriate. The majority refers to Gates I, pointing to the circumstances under which a covenant of good faith and fair dealing may be implied. That does not appear relevant where the District Court already concluded that the covenant did arise in the present contract. In a similar manner, the majority refers to Dare with emphasis upon the objective manifestations by an employer from which the covenant may be implied. Again, that does not appear relevant where the trial court had already reached that conclusion.
As previously mentioned, that “measurement” of the justifiable expectations of the parties had not been enunciated by this Court at the time of trial. While the Nicholson wording was not used in the present case, it seems to me that instruction 19 contains a good explanation of the duty. That instruction stated that in considering whether the defendant acted in bad faith, the jury may consider the manner in which the Plaintiff was treated during the employment relationship and at the time the plaintiff was discharged. The instruction further emphasizes that the jury should consider all the evidence which tends to establish either good or bad faith. It ends with the statement that if the jury finds the defendant has violated this obligation, the plaintiff is entitled to compensation for all injury *518 proximately caused by that violation. I conclude this is a fair statement of the law as it existed and was available to the trial judge and attorneys during the 1984 trial.
The jury was also instructed on the nature of the at-will employment contract and how the cause of action for breach of the implied covenant interplays with that relationship in instruction 17 which states in part that:
“If you find that Mr. Hobbs has proven by a preponderance of the evidence that the defendant breached the implied covenant of good faith and fair dealing, then you must find for Mr. Hobbs. But if not, then you must apply the general rule that an employment contract can be terminated for any reason or no reason at all.”
I conclude there is no basis for reversal because of the wording of jury instructions 17 and 19.
I would affirm the verdict of the jury and the judgment of the District Court.
MR. JUSTICE GULBRANDSON concurs in the foregoing dissent.